Good morning. May it please the Court, my name is Elsa Martinez, and I represent the petitioner Yoni Solis. I'd like to reserve two minutes for rebuttal. The petitioner seeks this Court to make the following three determinations, that the BIA did have jurisdiction to review the motion to reopen on the merits, and that the BIA committed legal error in finding that Mr. Solis would, in fact, be reinstated as a lawful permanent resident in the reopened proceedings. With respect to the first issue, the rationale behind 8 U.S.C. 1231A5 is the expeditious removal. It's a streamlined fashion to remove an alien who's already had his stay in court. However, nothing in that reinstatement provision vitiates an alien's right to file a motion to reopen, and that's exactly what Mr. Solis did. Well, wait, what do we do about the language in 1231A5 that discusses reopening? It's not subject to being reopened. That's correct. And as the Court in Morales-Esquerdo held, you cannot move to reopen a prior proceeding in a reinstated proceeding in a petition for review of a reinstatement. What Mr. Solis did that's different from Morales-Esquerdo is that he filed a direct appeal of the 2004 decision. He's not seeking to reopen in reinstatement. It's very clear in the Well, it says reopen or review. Correct. And what we're asking this Court to review, and I know that there's no case-on-point on this issue, is the safeguard, the necessary safeguard that still continues to exist based on case law, such as Dada v. Mukazi. I think we understand what you want us to do. But, you know, you were talking about the statute. And what we're asking about is, you know, we have a statute that has certain language. What do we do without language? It may give you some choices. I mean, there may be some way of interpreting it that we haven't thought about or that you can suggest. We can say it's unconstitutional. I mean, maybe there's a case that we're not aware of. I mean, what do we do with the language? The language of the statute specifically says you may not reopen. Or review. Not subject to be reopened or reviewed. In the reinstatement process, when an alien has been previously removed. It doesn't say that. It just says. It says the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed. It just makes it final. And the interpretation that we're seeking this Court to reach, which is an influx, is that it does not vitiate an alien's right to challenge, based on a due process, gross miscarriage of justice, whether he's inside the United States, outside, or even reinstated, to seek review of that initial order. That initial order was. Well, that's what you're asking us to do. I'm asking, I guess what I'm trying to figure out is how do we get there? How can we do it, given the language of the statute? What do we say? It's unconstitutional? Do we strike it down? What do we do with the  Well, if you read the statute on its face, Your Honor, it says 1231A5, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed. It doesn't say under any proceeding. Well, it has to add, Congress has to add the words under any proceeding in order to make that clear? Well, it's clear on its face that it may not be reviewed in reinstatement proceedings. That's what the Court held in Morales-Escuerdo. Even in Morales-Escuerdo, the Court held that there was a procedure for which that petitioner didn't avail himself, which was a motion to reopen, and that individual also was subject to reinstatement. I don't think I understood your answer to Judge Kuczynski's question. How do you want us to do what you want us to do? Yes, Your Honor. If an individual was subject to removal proceedings, he's reentered and he gets reinstated. It doesn't vitiate his right at any time, if there was a gross miscarriage of justice, to seek to reopen that prior order. What book are we going to use to do what you want us to do? The necessary safeguards have been in place always for an individual to correct a wrong, a due process violation, a gross miscarriage of justice, to be able to go back to the moment in time where his status was stripped in 2004. Not in the reinstatement. I understand reinstatement is a streamlined process. We're not going to do it at that venue. We're not going to do it before the ICE officer at a port of entry. What that individual needs to do, despite of being in the United States or outside, is that he needs to correct that wrong. He needs to go back to that original order. Tell me where the gross miscarriage of justice is. Where does that occur? In Mr. Solis' case, it was the fact that he was considered to be an aggravated felon and he was also deemed to be removable based on a firearms offense. Both of those grounds would not stand today. The fact that his sentence was vacated and he does not have a one-year sentence, he doesn't meet the definition of an aggravated felony. And also based on the changes in the law with regards to firearms, he would not be deportable under any of the charges that are on the notice to appear if he was before an immigration judge today. And he, in fact, would be reinstated as a lawful permanent resident. Would he have had any remedy from outside the country? He could have sought a motion to reopen just the same. From outside the country, without coming in and reentering illegally? Yes, based on the court's requirements. So once he knows that he can't come back into the country illegally and he comes back into the country illegally, what are we supposed to do with that? And he's been punished dearly for that. He's, in fact, been prosecuted for reentry and we're not justifying his conduct by coming in or not seeking either post-conviction relief from outside the country or even moving to reopen. The fact that he was in the United States and was present, as the minute orders and the record shows, he was transported from Federal custody to State custody. And he actually took the stand in his own defense to prove that he had been subject to ineffective assistance of counsel. The gross miscarriage of justice is that California vacated his conviction? His sentence, history or sentence, yes, Your Honor. Okay. And that was vacated because California had some doubts as to whether he had been properly advised by his attorney. Once he pled to the probation, that was incorrect. Although it looks like the California Supreme Court didn't think that there was much to this since it was clear that he was advised by the prosecuting attorney that there were immigration consequences for what he was doing. I'm not aware of an appeal of the denial of or he went back for resentencing. He was sentenced to less than a year. There was a post-conviction motion. He did take the stand in his own defense and it was found that he was not advised of the immigration consequences. It's important to note that when he would suffer the conviction initially, he was not placed in proceedings. It wasn't until after he went back for resentencing on a probation violation that a notice to appear was vacated, Your Honor. So the other issues that, just briefly, that I wanted to address is that I guess I'm still having a hard time understanding what is the gross miscarriage of justice. I understand that his conviction was vacated, but it was vacated on what seems to be just a really a technicality. It seems like there was no prejudice there. The question was, was he advised? The Californians seemed to think it was important that he would be advised by his own counsel rather than by somebody else's counsel that there were immigration consequences to the charge. And that just doesn't seem like, even if I thought that there was maybe something procedurally wrong with that, that doesn't strike me as a gross miscarriage of justice. So where's the gross miscarriage of justice? Well, having a two-year sentence on something that you initially were pled to under a six-month sentence, which then provoked or triggered the aggravated felony, but ineffective assistance of counsel, failure to advise, 1016.5, all those have been deemed to be constitutional violations because they are ineffective assistance of counsel. Right. But he was advised by counsel. He just wasn't advised by his own counsel. So why does that turn out to be a gross miscarriage of justice? Well, I think the Supreme Court in Padilla also said that an individual has a right to be advised. But he was advised. He was advised in the proceeding. The prosecutor said, I want to make sure that Mr. Solis understands there are So he was given advice on the record in the proceeding. Where's the gross miscarriage of justice? The fact that it would be a short certainty that he would be deemed an aggravated felon once he pled to a two-year sentence, rather than the original sentence that he had, or that the attorney failed to negotiate a sentence of less than a year. Clearly, they were able to do that and to reopen the proceedings. But now you're talking about ineffective assistance of counsel. This is a whole – this is a whole different – you've opened up a whole different front here. Well, what we're talking about is – You now want to argue that his counsel was ineffective because he failed to negotiate a better plea for him? That's routinely done. Well, it may be routinely done. Was this argued in your briefs? It's not before this Court because it's irrelevant. That was argued in the criminal proceedings, Your Honor, when there was a motion and it was heard and parties took the stand and said, you know, were you advised that in fact a two-year sentence – or you could have gone to trial. He could have gone to trial on a probation violation here and he didn't. He instead took a plea and he waived his right. So it is a constitutional violation. And he wouldn't have done that if he had known that there were immigration consequences? That's the argument that prevailed in criminal court. Right. But he was advised that there were immigration consequences. Well, Your Honors, what we're indicating is that despite 1231A5, clearly the court still – there is an avenue that should not – the door should not be shut by this court. It hasn't by other courts. It is a necessary and absolute safeguard that an individual at any time, if there's good cause, to reopen. By other courts. Well, Your Honor, there's no case like this that has been decided about – You can't say that there's been no case like it and also say it has been by other courts. The cases that I've reviewed – I mean, if there are no cases and – The cases that I've reviewed, individuals were challenging their motions to reopen in the Reen Statement proceedings. And they all came out against the Petitioner? They said that not in a Reen Statement proceeding. You may not – But they came out against the Petitioner? Absolutely. Right. So do you have any case that comes out that's – Ours is different. We challenge. We didn't challenge his Reen Statement. We're challenging the decision in 2004. But the most you can say at that point is that your case is distinguishable from the other cases. You can't say that other courts have – They have not reached that point because individuals – That's as much as you can say. I think I heard you say more than that. I misspoke. Other courts have – yes, I think you did misspeak. There's no time left to reserve. You are now in negative numbers. Thank you, Your Honor. Okay. You're back. Yes. For the last time. Hopefully not. May it please the Court. Craig Noah for the Attorney General. The first key fact here is that the statutory bar to reopening in the Reen Statement statute is unqualified. There's no temporal restriction. This is not just a bar to reopening the Reen Statement proceedings, which it appears is what Mr. Solis is advocating. That's before you're arguing that it's absolute. It is absolute. That was Congress's intention. We need – And so no matter what, how wrong the underlying order is or anything, it just can't be reviewed. What if it's discovered that contrary to all expectations – not in this case, but Petitioner turns out to be a U.S. citizen. He didn't know it. His mom gave birth to him in the United States. There was a birth certificate that comes to light. And then – too bad? There's no recourse whatsoever for anything? That is a very tough case. The question is what did that person do once they were removed? Well, let's assume the same set of facts is here as far as the procedure is concerned. But instead of – the underlying issue here is a conviction and whether it was a qualifying conviction. Let's say it's something more drastic than that. Let's say it is – I guess what I can think of the most drastic thing of all is it turns out unbeknownst to him, he is a U.S. citizen. And it's very clear. There's no real factual dispute about it. Does he sort of barred from his country, citizenship for the rest of his life? No. Unreviewably? That case we are now asking a higher order jurisdictional question. The immigration courts have – He's not without a remedy, is he? He can go from the other side of the border and say, wait a minute, I'm a U.S. citizen. You have to admit me. Yes, he can. He's not without a remedy. No, he has – he can appear at the border and claim – Even if he's subject to an order of removal? He could then contest that within his – But it's not reviewable. What is not – An order of removal. I mean, this is what we're talking about. Doesn't 1231A5 get in the way? It gets in the way. I mean, he's a U.S. citizen, right? Yes. But he's not a U.S. citizen like you and me. He's a U.S. citizen who, for odd procedural reasons, is subject to an order of removal. And my guess is if you come to – I mean, this person comes to the border and says, I'm a U.S. citizen, obviously he has no passport. He has no U.S. passport because he can't get a U.S. passport. He's subject to an order of removal. And says – and they pull up his record and say, well, you've got this uncontestable order of removal. Too bad. Would they just sort of let him in? Would they get review of the order? I mean, how do we get behind that? How do we get that person back in the United States or how does he or she facilitate that? That person, in that hypo, I would contest that the reopening bar doesn't apply to them. That is a hypo. Once you start admitting that the reopening bar doesn't apply to some people, you are just sliding down a slippery slope. You've just gotten sort of a toboggan. So, okay. So that person can get – so obviously the text doesn't entirely mean what it says, right? I think the text does mean what it says because it applies to aliens. I mean, that person is a citizen. I mean, they can contest that initial jurisdiction. It doesn't say except for citizens. You know, as Judge Bybee and I have been pointing out, we've got an unqualified order. Once we have to start reading exceptions into it, why isn't the exception that opposing counsel proposed just as good? She says, look, I – you know, that order was just wrong, just plain wrong. It's no longer – it's not – That is a novel case that the board would have to address in the first instance. That person should – they have legal avenues. They can file that motion to reopen from abroad just as Mr. Solis could have done instead of illegally reentering. We're not in any murky territory here. Mr. Solis was removed. He illegally reentered. Why isn't the answer to Judge Kuczynski's question that this statute does not apply to U.S. citizens, period? I agree. It does not apply. It applies to aliens. Well, it's an answer, but it's not a good answer because there's still an order of removal whether you are a U.S. citizen or not. So saying it doesn't apply to U.S. citizens doesn't get you anywhere at all. You are at that point a U.S. citizen who is subject to an order of removal which can't be reviewed, right? Are we on the same page? Right. Unless you can get rid of an order of removal, the good folks at the border are not going to let you cross. DHS would surely find some way to admit a U.S. citizen, wouldn't they? Right. There are other avenues, whether it be at the – Well, there may be other avenues, but that's – this isn't one of them. No, it's not. The way for such a person who was removed despite being a citizen would be to file that motion to reopen from abroad or take other avenues by directly approaching the Department of Homeland Security or going to the consulate. It's just a different circumstance. Counsel, notwithstanding the strength of the language in 1231a-5, isn't it also true that under 1252a-2d that we – That's pretty standard. We have lots of language in the INA that seems like it's final, and we have a way around that, which is to say we get to review for constitutional violations or for some kind of statutory interpretation violation. Okay. So – and haven't we also said that there is an exception, that the due process may be violated by a gross miscarriage of justice? That's language that appears in a number of our cases. Counsel didn't just make that up. Opposing counsel didn't just make that up. No. She was drawing on a number of cases from – of ours. Yes. That phrase, the gross miscarriage of justice, is out there. And first, regarding the 242a-2d, this – the bar to reopening is not a bar on this Court's jurisdiction. It's a bar on the Board so that the Court can address whether that was a legal error or not to apply that reopening bar to Mr. Solis. Regarding the gross miscarriage of justice standard, the – he – that – that is in conflict with the reinstatement provision, which says you don't get review now. He had the opportunity to do it when he went to challenge that removal order, but waived appeal, sought no judicial review. The cases about gross miscarriage of justice, like Garcia de Rincon and a few others, never addressed the fact of the 30-day jurisdictional bar to filing petition for review. And that was because those were prior – they were habeas petitions pre-real ID Act that got transferred into this Court. So that 30-day jurisdictional bar didn't come into play. And to now challenge a gross miscarriage of justice under a challenge of a reinstatement order would be kind of bootstrapping a one review or kind of – So you think those cases are wrong? They're not wrong for the context that they were in, but the government's position is, with respect to now a straight direct review of a reinstatement order, they would be. And here that's not the – that is not the case here. Here we are not on the judicial review of Mr. Solis's reinstatement order. We are on the judicial review of a very much subsequent motion to reopen removal proceedings. So that is adding more collateral tax that are not necessary or allowed at this stage in the game. And even – and to look at their – what Mr. Solis is saying is the gross miscarriage of justice, even if we were to look at that. They ignore the fact that a removal order is – the validity of it is judged based on the law at the time in effect. The California firearms offense was a removability ground at that time. The aggravated felony ground at the time his sentence was two years. And just because he was able to reduce that because of possible immigration consequences, that doesn't get to the heights of a gross miscarriage of justice. And as I see my time has – is winding down, I thank you again, Your Honors. Okay, thank you. We'll give you a minute for rebuttal if you wish to take it. You don't have to. Thank you. Cases, I will stand submitted.
judges: Kozinski, Bybee, Walter